IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

| | |
|---|---|
| Felecia L. Bailey,<br><br>    Plaintiff,<br><br>v.<br><br>Anson County Schools,<br><br>    Defendant. | C/A No: 3:25-cv-00537<br><br>**COMPLAINT**<br>**(Jury Trial Demanded)** |

The Plaintiff, Felecia L. Bailey, by and through her attorney, complains against Defendant, Anson County Schools, as follows.

## PARTIES & JURISDICTION

1. Plaintiff, Felecia L. Bailey, is a citizen and resident of Cabarrus County, North Carolina. Plaintiff was employed by Defendant, Anson County Schools, from August 2023, until her termination on June 6, 2024.

2. Defendant, Anson County Schools, is a K-12 public school district located in Anson County, North Carolina.

3. This action alleges race discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), as well as age discrimination and retaliation in violation of the Age Discrimination in Employment Act ("ADEA").

4. This Court has subject matter jurisdiction over these claims pursuant to 28 U.S.C. § 1331.

5. This Court has personal jurisdiction over the Defendant because it resides within the Western District of North Carolina, and because many of the events giving rise to this action occurred within this District.

6. Venue is proper in this District and/or Division pursuant to 28 U.S.C. § 1391 (b) because a substantial part of the events giving rise to the claim alleged occurred in this District and this Division.

7. Plaintiff demands a jury trial on all triable claims and issues.

## FACTUAL ALLEGATIONS

8. Plaintiff is a black woman over the age of forty (40) years old. She was born in 1965.

9. Plaintiff was previously employed by Defendant Anson County Schools. She was most recently hired by the Defendant in or around August 2023. She worked at Anson Middle School in Wadesboro, North Carolina.

10. Plaintiff was employed as an Instructional Coach. In her position, she was responsible for supporting Social Studies and English Language Arts teachers, working with them on their pacing, lesson planning, and classroom management. She worked with between six (6) and eight (8) teachers.

11. Though she performed the duties of an instructional coach, Plaintiff was misclassified as a teacher on a number of official forms and documents. Upon information and belief, instructional coaches and teachers are classified in different salary ranges in the payroll system.

12. Additionally, upon information and belief, instructional coaches in Anson County School District have standard teacher contracts, with an added provision on "special conditions" which is specific to the instructional coach role, and mentions the particular duties associated with that position.

13. Despite the fact that she was hired as an instructional coach, the contract that Plaintiff was asked to sign did not include the "special conditions" provision that was included in the contracts of other instructional coaches.

14. Plaintiff brought this issue to the attention of Defendant numerous times, and while she would not sign a contract that did not include the "special conditions" provision, she was always willing to sign a contract that accurately reflected her terms of employment and the duties she performed.

15. Plaintiff was placed on a 10-month employee schedule, rather than the 11-month and 12-month schedules offered to her younger white coworkers. Further, Plaintiff was compensated at a rate below that of her younger white coworkers, despite having the same or more experience and performing the same job duties.

16. Further, upon information and belief, Plaintiff's younger white comparators were properly classified and did not experience the same issues that Plaintiff did.

17. In August 2024, Plaintiff reported her concerns over her misclassification to the principal at Anson Middle School.

18. On or around September 4, 2024, Plaintiff received a request from the principal at Anson Middle School, asking her to acknowledge her position title, even though he was aware that Plaintiff's position title was entered incorrectly in the NC Educators State Evaluation Portal.

19. On around September 9, 2024, Plaintiff responded to the principal's request, reminding him that her position information was still incorrect in the State Evaluation Portal. The principal subsequently replied by informing Plaintiff that the position allotments and terms of employment are not his decision but are rather determined by the Office of Curriculum and Instruction and Human Resources.

20. On or around September 13, 2024, Plaintiff sent another email to the principal and to Human Resources, asking for an update on her concerns about the incorrect contract, terms of employment, and position title. Plaintiff received a response from the principal, who indicated that HR was working on correcting this information.

21. On September 20, 2024, Plaintiff sent an email requesting a meeting with the school principal and Human Resources to discuss her ongoing concerns about her contract, terms of employment, and position title.

22. After sending her email on September 20, 2024, Plaintiff did not hear anything else from the Defendant school district regarding her concerns until early December 2024.

23. On or around December 6, 2024, during an in-person meeting, Plaintiff asked the school principal about the status of her contract and about the discrepancies in her position title and terms of employment.

24. The principal informed Plaintiff that HR should have contacted her to inform her that she was now considered an "at-will" employee because she did not have a signed contract. Plaintiff reminded the principal that the reason she did not have a signed contract was that she had never received a contract that reflected her correct position title or terms of employment. The principal referred Plaintiff back to Human Resources.

25. Upon information and belief, there are other employees within the Defendant school district who are currently working without a signed contract but are not considered "at-will" employees.

26. On or around December 9, 2024, Plaintiff filed a grievance with Human Resources regarding her misclassification and contract issues.

27. On or around December 12, 2024, Plaintiff met with Defendant's Director of Human Resources to discuss her concerns. In this meeting, the Director of Human Resources confirmed that Plaintiff was now considered an "at-will" employee and further stated that Human Resources was not responsible for determining positions or employment terms, as that was within the purview of school principals. The Director also could not explain why Plaintiff's position was contracted for ten months while others in the same role had eleven- or twelve-month contracts.

28. During that meeting, the Director of Human Resources also acknowledged that there actually had been funding available for summer work in 2024. The Office of Curriculum and Instruction and the school principal had previously led her to believe that there was no funding for her summer employment.

29. In January 2025, during a leadership meeting with Defendant's new Director of Curriculum and Instruction, the school principal stated publicly in front of all meeting attendees that the district office was trying to convince him to fire Plaintiff.

30. In or around January 2025, Plaintiff was required to cover for an absent staff member for an entire day. This went against the standard practice and routine protocol for class coverage, as coverage by available staff was supposed to be the third option resorted to, after calling in a substitute teacher and class disbursement.

5

31. Plaintiff also experienced a continued pattern of communication withholding from her administrators and others, which directly impacted her job performance.

32. On or around January 24, 2025, administration threatened to write Plaintiff up for insubordination.

33. On or around February 3, 2025, the school principal informed Plaintiff that he had planned to retract the disciplinary action he issued Plaintiff, but Human Resources instructed him to follow through with the write-up.

34. On or around February 4, 2025, the school principal encouraged other staff members to submit false complaints about Plaintiff to Human Resources, in an effort to gather support for his accusations regarding Plaintiff's character and conduct.

35. Plaintiff filed her first Charge of Discrimination with the Equal Employment Opportunity Commission, detailing the above allegations, on February 5, 2025.

36. Thereafter, the Director of Human Resources subjected Plaintiff to retaliation by withholding her paycheck. Plaintiff complained about this to the district Superintendent, and her paycheck was released in April 2025.

37. Plaintiff filed her second charge of discrimination detailing the retaliation she experienced, on May 8, 2025.

38. On May 29, 2025, Plaintiff was notified that Defendant would not be renewing her employment contract for the upcoming 2025-26 academic year, and that therefore her employment with the school district would come to an end on June 6, 2025.

39. Plaintiff was denied an opportunity to grieve her termination.

40. Plaintiff filed a third Charge of Discrimination on June 27, 2025.

41. Plaintiff was subjected to a hostile work environment, discrimination, and retaliation, on the basis of her race and age, in violation of federal anti-discrimination law.

## FOR A FIRST CAUSE OF ACTION
### (Race Discrimination in Violation of Title VII)

42. Where not inconsistent herewith, the foregoing are realleged paragraphs.

43. Plaintiff is a black female.

44. At all times relevant hereto, she was qualified for her job.

45. Plaintiff was subjected to a hostile work environment as well as disparate terms and conditions of employment.

46. Defendant gave preferential treatment to white employees who served alongside Plaintiff in the instructional coach position. Plaintiff's white comparators performed the same job duties as Plaintiff but were properly classified as instructional coaches while Plaintiff was not and also received higher compensation than Plaintiff did.

47. Plaintiff was also subject to disparate terms and conditions of employment, as Defendant refused to offer Plaintiff a corrected contract that accurately reflected her position title and duties.

48. Plaintiff was also subject to a hostile work environment, as her school principal made public comments about efforts to fire her, and several employees of Defendant continually withheld important communication from Plaintiff, intentionally making it difficult for her to successfully perform her job duties. Such harassment was severe and pervasive and altered the terms and conditions of Plaintiff's employment.

49. Defendant also wrongfully terminated Plaintiff because of her race.

50. Plaintiff's race, black, was the direct and proximate cause of the adverse employment actions taken by Defendant's agents and employees, acting within the course and scope of their duties, which violated the Civil Rights Act of 1964, for which Defendant is liable.

51. Defendant is liable to Plaintiff for the willful and wrongful race discrimination against Plaintiff. Plaintiff is entitled to an award of actual damages, including, but not limited to, back pay, front pay, loss of benefits, reduced retirement, and damages for pain and suffering and emotional distress. Plaintiff is also entitled to punitive damages for the malicious, willful, and intentional acts of Plaintiff through its agents and employees, for pre and post judgment interest, an award for the increased tax consequences of a lump sum wage damages award, and attorney fees and costs of this action.

**FOR A SECOND CAUSE OF ACTION**
**(Retaliation in Violation of Title VII)**

52. Where not inconsistent herewith, the foregoing are realleged paragraphs.

53. Plaintiff engaged in protected activities under Title VII when she complained to Defendant about harassment and disparate treatment and terms of employment on the basis of race. Plaintiff also engaged in protected activities under Title VII when she filed EEOC Charges alleging various claims, including race discrimination, against Defendant. Plaintiff was retaliated against for her protected activities.

54. Defendant continued to take adverse action against Plaintiff after her protected activities. Defendant wrongfully withheld Plaintiff's pay and later wrongfully terminated her because of her Title VII protected activities. These adverse actions occurred close in time to Plaintiff's protected activities.

55. These actions taken against Plaintiff, which have resulted in damages, are the result of the planned and concerted effort to retaliate against Plaintiff for her protected activities.

56. Defendant is liable to Plaintiff for the willful, wrongful, and bad faith retaliation against Plaintiff for her protected activities. Plaintiff is entitled to an award of actual damages, including, but not limited to, back pay, front pay, loss of benefits, reduced retirement, and damages for pain and suffering and emotional distress. She is also entitled to punitive damages for the malicious, willful, and intentional acts of Defendant through its agents and employees, for pre and post judgment interest, an award for the increased tax consequences of a lump sum wage damages award, and attorney's fees and costs.

**FOR A THIRD CAUSE OF ACTION**
**(Age Discrimination in Violation of the ADEA)**

57. Where not inconsistent herewith, the foregoing are realleged paragraphs.

58. Plaintiff is over the age of forty (40). She was born in 1965.

59. At all times relevant hereto, she was qualified for her job.

60. During the course of her employment with Defendant, Plaintiff was subject to a hostile work environment and disparate terms and conditions of employment on the basis of her age. Plaintiff was also wrongfully terminated on account of her age.

61. Plaintiff's school principal made public comments regarding efforts to fire her, and some of Defendant's employees continually withheld important communications from Plaintiff, making it difficult for her to perform her job duties.

62. Plaintiff was also intentionally misclassified, unfairly compensated, and otherwise denied equal terms and conditions of employment on the basis of her age.

63. Defendant terminated Plaintiff because of her age.

64. Such conduct by Defendant constitutes age discrimination for which Defendant is liable.

65. Such conduct by Defendant is malicious, willful, wanton, and in reckless disregard for the rights of Plaintiff.

66. As a result of the age discrimination described herein, for which Defendant is directly and proximately liable, Plaintiff has suffered damages, including but not limited to, back pay, front pay, back benefits, and front benefits. Plaintiff is entitled to an award of actual damages and liquidated damages for the willful and intentional acts of Defendant through its agents and employees, as well as reasonable attorney's fees, costs of this action, and pre-judgment interest on all damages recovered. Plaintiff is further entitled to any equitable relief which this Court may deem just and proper. Plaintiff demands a jury trial on her claims.

**FOR A FOURTH CAUSE OF ACTION**
**(Retaliation in Violation of the ADEA)**

67. Where not inconsistent herewith, the foregoing are realleged paragraphs.

68. Plaintiff complained about the hostility work environment and disparate terms and conditions of employment to Defendant. Plaintiff also filed multiple Charges of Discrimination alleging age discrimination with the EEOC. She engaged in protected activities when she did so.

69. After she engaged in these protected activities, Plaintiff experienced retaliatory acts from Defendant, including the withholding of her paycheck and her eventual termination in June 2025. These adverse actions occurred close in time to Plaintiff's protected activities.

70. Plaintiff experienced retaliation because she engaged in protected activities.

71. The above constitutes unlawful retaliation for which Defendant is liable. As a result of the retaliation alleged herein, Plaintiff has suffered damages, including but not limited to back pay, front pay, back benefits, front benefits, and diminished earning capacity, Plaintiff is entitled to an award of actual damages and liquidated damages for the willful and intentional acts of Defendant through its agents and employees, as well as reasonable attorney's fees, costs of this action, and pre-judgment interest on all damages recovered. Plaintiff is further entitled to any equitable relief which this Court may deem just and proper. Plaintiff demands a jury trial on her claims.

## **PRAYER FOR RELIEF**

WHEREFORE, for the actions alleged above, Plaintiff prays for judgment to be awarded against the Defendant for all recoverable damages she has suffered because of the claims alleged herein in an appropriate amount to be determined by a jury; as well as any other relief that this Court should deem proper. Plaintiff further requests liquidated damages, punitive damages, and attorney's fees and costs. Last, Plaintiff requests pre- and post- judgment interest be awarded on all damages. Plaintiff demands a jury trial on all of her claims.

Respectfully submitted,

**CROMER BABB & PORTER, LLC**

BY:  */s/ Jacob J. Modla*
Jacob J. Modla (#17534)
1418 Laurel Street, Suite A
Columbia, South Carolina 29201
Post Office Box 11675
Columbia, South Carolina 29211
Phone: (803) 799-9530
Fax:    (803) 799-9533
Jake@CromerBabb.com

***Attorney for Plaintiff***

July 22, 2025

Columbia, SC